JAMES H. POST, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FRED H. HOWELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THOMAS A. HOWELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 12488, 12489, 12492.   Promulgated June 11, 1928.

*Lorenzo D. Armstrong, Esq.,* for the petitioner.
*Harold Allen, Esq.,* for the respondent.

516

**OPINION.**

SIEFKIN: The dispute in these proceedings results from the respondent's position that the losses claimed were not closed transactions in the years written off, presumably because of the partial reimbursement made by Congress in 1923. The only explanation

offered to the petitioners or to us (the respondent has filed no brief and made no argument) why the losses were disallowed is found in the report of the field examiner, which report was attached as an exhibit to the stipulation. There it is said:

The examining officers contend that this was not a loss in the year 1920 but should have been set up on the books as an Account Receivable, since the taxpayers were acting as agents of the Government, to purchase and sell sugar without loss to them, this fact being fully established by the reimbursement to the taxpayers of the amount of their claim less adjustments.

The taxpayers stated that at December 31, 1920, they were unable to locate anybody legally obligated to reimburse them for their loss. While this may be true, yet the taxpayers served notice to the Government that their claim was not a closed transaction, since a bill was introduced in the Senate January 5, 1921; or five days after they decided to claim this loss, requesting the legalization of the act of the Department of Justice which was subsequently passed. Since the U. S. Government is not a defunct corporation, and as this loss was paid the examining officers believe that it is proper income in 1920 and subject to prevailing rate of tax.

We consider that the position of the respondent, whether or not it rests upon the reasons advanced above, is without merit. It seems beyond question to us that the petitioners, when the sugar was sold, realized losses which were properly charged off during the years that the sales were made and that the hope, or even expectation, that Congress might afford relief by a special act was not sufficient to justify setting up the amounts as accounts receivable against anyone. We believe that the cases are more favorable to the petitioners than was the case in *United States* v. *White Dental Mfg. Co.*, 274 U. S. 398, decided May 16, 1927. There the taxpayer wrote off as a loss the value of assets at the time they were sequestrated by the German Government. Later it filed claim with the Mixed Claims Commission and was still later allowed a portion of the amount. The Commissioner of Internal Revenue disallowed the deduction in the year of sequestration on the ground that the loss was not a closed transaction. The Supreme Court said:

The sequestration of enemy property was within the rights of the German government as a belligerent power and when effected left the corporation without right to demand its release or compensation for its seizure, at least until the declaration of peace [citing authorities]. What would ultimately come back to it, as the event proved, might be secured not as a matter of right, but as a matter either of grace to the vanquished or exaction by the victor. In any case, the amount realized would be dependent upon the hazards of the war then in progress. * * * The quoted regulations, consistently with the statute, contemplate that a loss may become complete enough for deduction without the taxpayer's establishing that there is no possibility of an eventual recoupment. It would require a high degree of optimism to discern in the seizure of enemy property by the German government in 1918 more than a remote hope of ultimate salvage from the wreck of the war. The Taxing Act does not require

the taxpayer to be an incorrigible optimist. * * * It is enough to justify the deduction here that the transaction causing the loss was completed when the seizure was made. It was none the less a deductible loss then, although later the German Government bound itself to repay and an award was made by the Mixed Claims Commission which may result in a recovery.

Under similar circumstances we held, prior to the decision in the Supreme Court, that a loss was completed at the time of the seizure by the German Custodian. See *Emil Stern* and *Jules Stern*, 5 B. T. A. 89, where we said:

It would accordingly appear that, after the property was taken by the Custodian, the taxpayers were entirely devested of their property. All that they had was the hope that the treaty of peace would provide for the return of such property, or its value, or, if not, that the United States would compensate its nationals for seized property which Germany might be permitted to retain under such treaty. Any claim which existed, however, was a claim upon the United States, either to secure a return of the property by Germany or, if it allowed confiscation as part of the terms of the treaty, to compensate those whose property was lost.

Here we believe there was no legal right of recoupment which would permit the deductions to be taken as losses in other years than those in which the sales were made.

*Judgment will be entered for the petitioners.*